**TEXAS & N. O. R. CO. v. FREEMAN.**
**(No. 2290.)**

Court of Civil Appeals of Texas. El Paso.
March 14, 1929.

Rehearing Denied April 4, 1929.

Baker, Botts, Parker & Garwood, of Houston, and Kemp & Nagle, of El Paso, for appellant.

Jones, Goldstein, Hardie & Grambling, of El Paso, for appellee.

WALTHALL, J. Appellee brought this suit against appellant to recover damages, alleging that her husband, J. R. Freeman, died in El Paso, Tex., on or about June 4, 1928, from injuries proximately caused by the negligence of appellant railroad company's employee, in that appellant's employee, with great rate of speed, suddenly, and without warning, let down a crossing gate, operated by appellant from a tower, extending across North Oregon street, the arm of which gate extends across the sidewalk on the east side of said street; the arm of the crossing gate striking said J. R. Freeman upon his head, knocking him down, and causing injuries from which he died.

Appellant answered by general demurrer and general denial. A verdict was returned by a jury in favor of appellee, and judgment entered thereon.

Oregon street runs north and south. Appellant's line of railroad runs east and west, and at its intersection with said street appellant operates and maintains what is called a crossing gate extending across said street with an arm of the gate extending across the sidewalk, and operated from a tower; the purpose of the crossing gate and arm is to guard the passing traffic at that point on the approach of passing engines and trains, the gate being operated by an employee of appellant.

The evidence shows without controversy that J. R. Freeman, the deceased and husband of appellee, was 63 and possibly 66 years old at the time of his death; that appellee and the deceased had adult sons and daughters who paid the deceased $50 per month to look after their property. The evidence further shows without controversy that prior to the time of his death the deceased was under the treatment of Drs. Varner and H. E. Stevenson. The point of controversy in the evidence is as to whether the deceased, J. R. Freeman, was actually struck and killed by the arm of the crossing gate when lowering the gate at the approach of some train or engine, or whether he died from natural causes. All of the evidence tends to show that he fell and virtually expired at the point on the sidewalk on North Oregon street, where

the arm of the crossing gate when lowered extends across the sidewalk.

The contention of appellee is that the deceased was struck and killed by the arm of the crossing gate on the lowering of the crossing gate at the approach of a train, as alleged, while appellant insists that the preponderance of the evidence shows that no train was then approaching, that the gate was not then lowered, and that while deceased fell and expired at the place stated, his fall and death were from natural causes, that is, was caused by a disease of which he was then suffering.

## Opinion.

On special issues submitted the jury found that the deceased, J. R. Freeman, on or about the 4th day of June, 1928, met his death by reason of being struck by the descending arm of a crossing gate operated and maintained by defendant, at the intersection of Oregon street with defendant's tracks; the jury found that from a preponderance of the evidence the said arm was suddenly lowered; that defendant was guilty of negligence in so lowering said arm, and that said negligence in so lowering said arm was the proximate cause of the death of J. R. Freeman; that plaintiff suffered pecuniary loss as a proximate result of the death of J. R. Freeman to the amount of $3,000.

Judgment was entered for said sum.

Appellant presents several propositions all to the effect that the jury's findings as to the cause of the death of the deceased, J. R. Freeman, are contrary to and against the overwhelming weight and preponderance of the evidence, in that the preponderance of the evidence shows that deceased died from natural causes; that the evidence shows that the deceased collapsed in the sidewalk from high blood pressure and kidney trouble, and that he was not struck by the descending arm of the crossing gate; that though there was sufficient evidence to have the case submitted to the jury, the trial court erred in overruling appellant's motion for a new trial, because the verdict is not supported by the preponderance of the evidence.

The evidence is conflicting. A few extracts from the several witnesses who testified show the following:

Mrs. Louise Stamon testified for appellee that she was going north on Oregon street and witnessed the accident and heard two trains coming. An elderly gentleman was some six or ten feet ahead of her going north; saw two engines going in different directions. Freeman stopped, and the gates came down part way, then stopped for a second or two, and then crashed down and struck him; the gate struck him first on the back of the head and then went down and struck him on the shoulder. When the gate struck him, he staggered to his knees and then went over to his side; he did not fall back.

Otto Griggs, undertaker, testified for appellee: Embalmed Freeman's body; found some marks on his body; his right eye was swollen out almost as large as his fist; a little scar above the right eye; found a fracture in the base of his brain, in the back of his head; found a big cut on the right shoulder just in the middle of the shoulder blade about 2½ inches long, right in the middle of the shoulder, you could lay your little finger in the cut; the shoulder was broken, the joint just above the shoulder blade; there was a fracture of the skull.

Mrs. Jewel I. Barron testified for appellee: Saw an elderly gentleman who was injured (stating time and place). Witness was walking along sidewalk, and he was just ahead of her. That gate fell down and hit him; it hit him on the head. As Freeman got to the crossing, that gate fell down and hit him on the head and he fell down on the pavement. The gate did not come down slowly the way they usually do; it came down quick. Witness said she was hurrying to get across before the trains came. Freeman was hurrying to get across just as witness was. The gate made a cut on his head. Witness said she noticed that because he was bleeding very badly. Witness was about 10 feet from where he was.

A. A. Root testified for appellee: Saw a crowd congregate (at place in question) shortly after 11 o'clock; saw two locomotives go by some three or four minutes before the crowd congregated; witness went to where the crowd was; saw Freeman down on the sidewalk; he was bleeding in the back of the head.

Epperson Hernandez testified for appellant: Is a tower man; at the time of this accident he was in this tower talking to the man in that tower. Ordinarily they bring down two engines there about 15 minutes ahead of this passenger train. They came down on this day. When they come, the tower man lets the gates down; that is about 11:15. He (the tower man) was visiting with witness, "and he did not notice those engines until they were right on the crossing; he dropped that gate down in a hurry."

Dr. H. E. Stevenson testified for appellee: Examined Freeman after the injury; found a skull injury, injury to the head, injury to the shoulder, right side of head, and shoulder; injury to the skull could have been caused by a lick of some kind; it was sufficient to cause his death. Had treated Freeman. He had nephritis, acute, the concurrent kind, chronic nephritis. He had been discharged. Considered the condition of his health very good at the time he was discharged, considering his age. "Saw no reason why he should not live the allotted time. Of course any one having nephritis might die at any time."

Appellant produced several witnesses who

testified directly contrary to what appellee's witnesses had testified, as to the gate striking Freeman; in substance, that Freeman was going south instead of north on Oregon street; that no trains were approaching, and the gate was up; that Freeeman was not struck by the arm of the gate, but threw up his hands and fell.

The evidence, as we view it, is sufficient to have supported the verdict had the jury found for appellant, but we are not prepared to say the verdict is affirmatively wrong.

The case is affirmed.